Good morning, your honors. May it please the court, my name is Richard Tubble. I represent the defendant appellate police officers in this case. I'd like to reserve three minutes for rebuttal, please. Your honors, to prevail in this case, the plaintiff must show that no reasonable officer could have found probable cause to arrest on the basis of... because I'm not sure about the process here. Let's, as we all know, the district judge here, after an appeal was taken, filed a written opinion addressed solely to the false arrest claim. And apparently he didn't think that the defendants had moved for summary judgment on qualified immunity grounds on the excessive force and malicious prosecution claims. And I think he probably was wrong about that as I look at the record. But he didn't say, well, let me read you what Justice Alito, then Judge Alito, wrote for this court in Forbes v. Township of Lower Marion. He said, in denying the motion for summary judgment on immunity grounds, the district court held without elaboration that the plaintiffs had raised genuine issues of material fact regarding their Fourth Amendment excessive force claim. The scope of our jurisdiction to review the decision of the district court depends upon the precise set of facts that the district court viewed as subject to genuine dispute. Because the district court did not identify this set of facts, we find that we are greatly hampered in deciding this appeal. Accordingly, we remand the case to the district court so that the facts found to be in dispute can be specified. We also announce a supervisory rule to be followed in all subsequent cases in which a summary judgment motion based on qualified immunity is denied on the grounds that material facts are subject to genuine dispute. So that we can carry out our review function without exceeding the limits of our jurisdiction under Johnson v. Jones, we will henceforth require the district courts to specify those material facts that are and explain their materiality. Now, does that supervisory rule apply to this case? Putting aside for a moment the arrest, false arrest claim. Sure it does. Judge Shapiro should have found the facts that she found to be undisputed. And she didn't. And she fairly clearly disregarded that supervisory admonition. But the Supreme Court has been clear that when a case like that hits your desk, the Court of Appeals may and indeed should go through the record and make the same analysis that the district court should have made. So it's not a jurisdictional issue. Help me with that. I mean, why does Johnson v. Jones not say exactly the opposite? And why does Judge Alito not say this is exactly the opposite of what I just read you? Because Johnson deals with the narrow issue of evidentiary sufficiency to support a particular finding on an historical fact. We have been very respectful of that decision in framing the appeal, and we have taken off the table the same historical facts that Judge Shapiro described as in dispute, specifically Officer Walker's good faith belief that he had suddenly discovered that this was Andre and not Omar. And so we say, OK, anything that was going on in Officer Walker's mind is off the table. But Barron's, a year after Johnson, instructs Johnson was never intended to defeat all appealability in summary judgment. And what Justice Scalia says is Johnson permits appellant to claim on appeal that all of the conduct which is sufficiently supported for purposes of summary judgment met the Harlow standard of objective legal reasonableness. And that's exactly what we've done here. We've gone through the record. We have identified the portions of the record very clearly on which we're relying so that your honors would have the benefit of that laying it out. And of course, the appellee had the opportunity to respond to that. And so now we have asked the court in accordance with Barron's, take a look at these facts. You have jurisdiction to consider whether they establish probable cause or arguable cause. And objective reasonableness is a mixed question of fact and law, but it's one the court makes and not the fact finder? That's correct. And that's what your honor said. And both of your honors said in Carswell. Carswell said this is a legal determination. And the test is that no reasonable officer could have come to this conclusion. Otherwise, there's qualified immunity. And it is from the perspective of a hypothetical officer. What I'd like to ask your honors to do is imagine in accordance with what the Supreme Court asked you to do, that Officer Walker had broken his toe on the way to this search. What search? The search of the two houses where the plaintiff was arrested. And they called up headquarters real quickly for somebody of his rank to come in and make his decisions for him. So he's got the written reports. He's got the information that he finds at the scene. And for that hypothetical officer, here's what he finds. He finds that the plaintiff looks like the photograph of the person whom the officers originally identified as the seller. He finds that the person they originally identified might be in jail. He finds that the person whom plaintiff resembles was seen engaging in two drug transactions and was going in and out of the house on whose steps he was sitting. But that's inconsistent with your first finding, and that is that he may have been in jail. I wanted to ask you about that. You said may have been and not was in jail. Isn't it undisputed that at some time, either October 7 or October 21, that he was in jail, that Omar was in jail? I'll take that, Your Honor, because it helps me. How does that help you? Because if they spent two weeks thinking they were observing Omar and then find out he's in jail, well, it makes it entirely plausible that the person who looks like Omar was the person whom they had seen. That's what you're arguing. Okay. So you have to somehow explain what's this person doing here. So you're voicing it from the initial tip of Omar and Dana and saying, yeah, the initial tip was Omar. You've got a visual correlation of two people out there who looked like this photo. You've got the police photo saying this is Omar. It may or may not have been Omar out there that day. But whoever was out there that day is this guy who had gotten handcuffs here to protect the property during the search. Right. And he was present on that porch five minutes after a drug transaction. And two other members of the family were given that address as their home address, had six and five arrests for drug offenses, respectively. Some permissible inferences that a reasonable officer, the person called up from headquarters, could make. He's sitting on the steps. He's not a passerby. So they didn't make that error. A person who was not trusted by the co-conspirators. I know where you're going. That's the structure of an argument. To say, well, he wouldn't be here if he wasn't involved or trusted. That's a bit of a stretch. Absolutely. If it were just one little fact and you were a jury, there's no way that I could argue that that's proof beyond a reasonable doubt. But remember. The medical officers, Walker, Kluge, none of them said that they factored in that fact. They just arrested him because he'd been ID'd as being one of the two people involved in the controlled buy. That's right. Not because he was on the porch. But recall that their subjective reasons for making the arrest are beside the point. In actuality, they arrested him because Officer Walker said that's the guy. And that has enormous importance for the four non-Walker officers here. Help me out here. The district court said, concluded, and I quote, It's impossible to determine on the present record whether it was objectively reasonable for Walker to mistake plaintiff for the unknown male he had observed. Therefore, the jury could determine that it was objectively unreasonable based on this current record. Now, you say we can, under Johnson versus Jones, we have jurisdiction to review whether that statement is a correct statement or not? Absolutely. And with confidence for this reason. Pardon me? I say absolutely. I can say you have jurisdiction. Okay. And what do you cite supporting that? Because note that what she's saying, there's a sufficiency question on which issue. And she's saying there's a sufficiency question on objective reasonableness. That objective reasonableness is a question of law. So had she said there's a sufficiency question on a particular historical fact, then I'm stuck with it. But what she said was, when you parse it, this record is insufficient to make the legal determination of objective reasonableness. That's not her final call. That's your final call. She cites Montero to substantiate her position that there may be bad faith here under Montero. That's a fact. But that's a very different kind of case than the First Amendment case. I think that's where the train blew off the track, was when Montero was brought into it. The language from Montero was used. So you have a First Amendment case where motive really does go to whether or not there's been a constitutional deprivation. Right. Being imputed into a Fourth Amendment case where motive becomes irrelevant, but in effect becomes objective reasonableness. To me, that's exactly what this witchcraft is. Right. And looping back to your prior statement about mere presence and whether the officers can think about that, he was present on a step where five minutes before a drug transaction had occurred. I ask your honors to engage in this thought experiment. Suppose any of you had wanted to stand on that sidewalk minding your own business for a protracted period of time, and this drug gang is busy walking in and out of that house selling drugs. Ask yourselves whether you'd have been permitted to do that. That's on the sidewalk. He was sitting on the steps. Now, sure, is it permissible? He said drug gang. Could he have been Michael Corleone's trash bag from the war with metals? An innocent family member who was caught? Sure he could have. You're running out of time. Let me get everything on the table here, out on the table. What was Andre prosecuted for? He was prosecuted for manufacture, delivery, possession with intent, conspiracy to commit that, knowing and intentional possession, and possession of paraphernalia. Okay. Now, help me with it. As I understand, you have two independent theories for your malicious prosecution claim, one having to do with the absence of probable cause for the arrest. But you say even if we don't win on that, we still win because the uncontradicted record indicates that Andre was guilty of possession of crack, which was found in his belt or something or other after we arrested him. First of all, is there any evidence in this record that what was found on him was crack other than that the officer who found it thought it looked like a bag with white powder in it? There aren't any lab reports in this record, right? Not in the record before you, Your Honor. But I would submit that that's the plaintiff's burden. Well, help me with this theory. I thought the idea that if you would have suffered, your argument was, well, this guy would have suffered everything that he claims to have suffered as a result of a malicious prosecution, whether or not we had probable cause because he was in possession. Right. But does that justify, if somebody is complaining about a malicious prosecution for possession with intent to distribute, knowing that you don't, he's not guilty of that. Does it? Is it a defense to say, well, but there was simple possession here? I think, Your Honor, it would be best to address that by supplemental letter because Johnson v. Nor was just decided by this court two or three months ago, which addressed that situation. Johnson v. Nor, however, was after this event. So it wasn't precedent that would have figured into the objective reasonableness and the qualified immunity. And it's distinguishable because here the DA prepared the complaint, and he determined that the quantity found in the belt was sufficient to indicate possession with intent to distribute. That is disputed. I thought that the plaintiff is disputing whether or not he had crack on him. I don't think so. That is conceded that he had crack on him? Well, there's a lot of things that the plaintiff disputes that he made no record on. So I want to be careful about that. He submitted no affidavit saying that crack wasn't on me. He submitted no sworn evidence at all in opposition to our motion. So I'm allowed to say, no, there's no evidence in the record that he did not possess that crack. He may have averted it somehow. Thank you, Your Honors. Good morning, Your Honors. Good morning to the court. My name is Michael Pileggi. I'm here representing Andre Blalock, who is the plaintiff and appellee in this case. Let's pick up where we just left off. Doesn't the uncontradicted evidence on the record in this case, uncontradicted, establish that your client was the man that the police had observed for two weeks selling crack with his brother? Absolutely contradicted, Your Honor. Wait a minute. There are affidavits of Walker saying he's the same man, right? That's correct. Okay. Now, where is there some affidavit or other evidence that says that's not right? You haven't put anything in the record, have you, in the way of competent evidence? Yes, absolutely, Your Honor. There was actually a letter that was in the record at the summary judgment stage. The alibi letter. I'm sorry? The alibi letter. But is that specific as to time? I thought the alibi letter was important. The alibi letter is not what you're talking about. Correct. Correct. That he was at an AIM, an organization, aviation organization, at an interview. He appeared at approximately 1 o'clock. There is substantial evidence that he could not have been at the scene. What time was the sale on the 21st? His actual arrest was approximately 3 o'clock. But in the letter, it did state that he was at the facility for some time. They could not say exactly when he left, but he was at the facility for some time,  Where was the facility? It was at the Aviation Maintenance Institute. What year is it? It's in Philadelphia. It's on Grant Avenue. It's approximately, I think, a half hour from the scene of the arrest. Do you know what the address is? I'm sorry, Your Honor? Do you know what the address is? I believe it was 3200 Grant Avenue, if I'm not mistaken. The arrest... I'm sorry, Your Honor. The arrest was in and around the area of North 38th Street. It says 522 North 38th Street. It took public transportation. They did not have a car, so there was an issue of public transportation. But it is some distance from the scene of the arrest. That is one contradicted fact. Another one is the fact that, and something that hasn't been mentioned, was the fact that the affidavit, in this case the officer, knowingly and intentionally provided false information in the affidavit. There was testimony at the criminal proceeding from the affidavit himself that he knew two weeks, three weeks prior to the issuance of the affidavit of probable cause that Omar Blaylock, who is Aynur Blaylock's cousin, was incarcerated. He knew that at some time. That's what confused me. He knew that at some time between... He got that information sometime between October 7th and October 21st. That for some period of time, he was in custody. They didn't know the exact dates. And was there any testimony about his experience with the Philadelphia prison record system? Did he say, I've had a situation before where they thought somebody was in custody who wasn't in custody? He actually testified at deposition that he ran what they call a custody check, which is slightly different than an NCIC check. NCIC check just determines whether there's any open warrants. Custody check determines whether they're actually incarcerated. That's what he stated. He ran a custody check and determined that Omar was indeed incarcerated. And that was sometime before the submission of the affidavit of probable cause. So it is clear that at the time when he submitted the affidavit of probable cause, he knowingly provided false information. And that is very critical to whether his motives in substantiating whether there was probable cause to arrest him. Now, why is the motive relevant? There was another test of objective reasonableness, and isn't the motive irrelevant? The motive is irrelevant. And the only reason why it's an issue in this case is because the defendants in this case made it an issue at the summary judgment stage. They say to several cases that would suggest that they have a good faith defense because they mistakenly identified Andre Blaylock as Omar, or Omar Blaylock as Andre Blaylock. So they infused that issue into this case. The court, of course, was addressing that in their opinion when, in response to the defendant's own submission, that there was a good faith defense in this case. But, yes, I agree with the court. It is whether it's objectively reasonable. However, this court has to accept the set of facts that are identified by the district court. And in this case, the district court laid out a set of facts that it believed was historical facts in dispute. There were several of them. The first fact was the fact that the confidential informant never mentioned Andre Blaylock. He never mentioned anybody, did he? The she is was a she. Did the CIA ever give anybody any names? Nothing. Never gave any information. Never even gave any identifying information. But they saw the button. One thing that's struck me much about this case, having a lot of experience with Philadelphia arrests and searches, is the care, and apparently there's a history here with the district court, because she has a footnote talking about these officers. So there may not be real good blood between the district judge and these officers. But that aside, someone comes to Reynolds and says, he gives them names, Dana and Omar are selling drugs, or storing drugs in a house on 38th Street. Reynolds then goes to Walker. Walker takes that information that there are drugs being stored inside the property, does a record check on Andre and on Dana, finds they both have a history of drug busts. Then he sets up a surveillance and sees two people out there selling drugs, and I guess at that time he had the photos of Dana and Omar, sees two people that he thinks are Dana and Omar, which corroborates what the officer tells him. He's got a hand-to-hand buy with pre-recorded buy money, and then he sets up another hand-to-hand buy with pre-recorded money that they observed. You know, if you talk about objective reasonableness, it really seems that this officer, unlike many that I've encountered, really did eyes and cross cheese to, one, make sure he could build the case, make sure that the informant wasn't blowing smoke, and make sure he got the right people. Your Honor, there was one critical fact that was left out in that analysis, was that after he got the information from the confidential informant, they went, the whole team went, and then pulled photographs of both Dana and Omar, and they took the photographs out to the scene to ensure that what they were observing was indeed Omar and Dana. And that's, they do that to independently verify, because they can't rely solely on the information provided by the confidential informant. They have to then go out and do an independent investigation, and their independent investigation was to go out and set up surveillance. But when they did so, they did it with pictures, photographs of both individuals. That's why the defense now comes in and objects to the denial of summary judgment, saying that, well, look, if you look at these two photographs, they look alike. They do. Well, if you look at the photographs, there's different facial hairs, but one telling thing that was never addressed was the fact that Omar is maybe 5'11", 180 pounds. I'm sorry, Andre. Omar is 6'4", about 240. So there is some physical characteristics that are different. I assume there are mug shots in the appendix. From the mug shots, one has a face that's fuller than the other one. The height, there's no clue about. I don't know if they had physical descriptions or not. But from the photographs, you can tell one has a face which is much fuller. I'm not sure if you can tell that kind of weight discrepancy from the photographs. But the point, it seems to me, is that looking at these guys from a distance of 45 feet, there is a resemblance in terms of the mug shots that they have. So they see two people that match up relatively well. One could say reasonably well with the photographs that they have. They've got information that the two people whose pictures they're looking at are storing drugs in that property. They look up and they see the same two people they think selling drugs, but then walk a CI in with pre-recorded bond money to make a buy from the two people whose pictures they think they have. Somewhere in there, they get information about Omar being in custody. That's why I asked my question, because if the officer thinks he sees Omar and Dana standing there, sees Omar and Dana sell drugs on at least one occasion, the second occasion was a third person, I guess Walker, not the same two, I'm not sure it's that unreasonable to say, look, the prison screwed up again. They're saying this guy's in custody. He's not in custody. I just saw him sell to our confidential informant. Your Honor, the problem is that the affiant never identified this mistaken identity belief until after the arrest. Well, that's when he realized he was wrong. And the officer had an obligation to provide the correct information. He could have corrected the information by putting unknown blackmail. It's done all the time. He didn't think it was. Maybe on the 21st, because, again, you've got another person. Walker comes into play on the 23rd, 21st. But until Walker becomes part of the duo selling drugs, he didn't think he had an unknown male. He thought he had Omar and Dana. There was no reason to put unknown blackmail in the report. No, but there would be in the arrest report. And part of the evidence was that the arrest report was a mirror image of the affiant. With the exception that the names are substituted. And there was one other telling issue was the first paragraph with respect to the confidential informant. It remained that the confidential informant provided information that Omar and Dana were selling dope. And that's significant because they left that in the arrest report. They changed everything else. So if they're doing an independent investigation, if they're not going to base their probable cause finding on what the confidential informant told, and they're going to go out and do an independent investigation, then it would have been, again, very easy to remit the problem by putting in there that it was an unknown blackmail. Or put some information that they were observing Omar, they believed they were observing Omar initially, but ultimately it ended up being Andre. And it's also telling that this officer, the affiant in particular, never told anyone after Andre was arrested that there was a problem of mistaken identity. Mr. Blaylock was floundered in prison for close to 16 months before his criminal defense attorney was successful in getting the case discharged. Based on the incredulous testimony of the affiant. So that is, it is telling and it does go to the objective reasonableness as to whether it was an intentional intent to misrepresent the facts that are in the affidavit of probable cause. There was also other historical facts. He wasn't arrested on the affidavit, he was arrested, had he been arrested on the affidavit. And then it seemed to me that that would factor into the objective reasonableness inquiry. He's arrested because Walker walked up and ID'd him as one of the two guys selling drugs after he sold me handcuffs on the steps. But if a jury were to find that he intentionally misrepresented facts to support probable cause to arrest Andre, not Omar, then there could never be a finding that he's entitled to qualified immunity. He intentionally misrepresented facts. And that will go to the objective reasonableness of whether his conduct was objective or not. I'm not so sure that's true because again, that doesn't factor into the arrest. You're saying they could look at what happened in filling out the police, the arrest report, and kind of walk that backwards in time and find that that reflected on your state of mind at the time of the arrest. That's a good argument to a jury. I mean, that is the issue is that he knew now that he had the wrong guy. He arrested Andre and he had to support that arrest with some probable cause. The only thing that they could say at that point was they weren't observing Omar, they were actually observing Andre. Now, if the fact finder concludes that that testimony is not worth credit, then the fact finder or then the court then, in applying the qualified immunity standard, could never say that his actions were objectively responsible. But we still don't know if there's a stable evidence. We still don't know that he didn't observe Andre. Well, it's quite possible, at least on October 7th, it's a weaker position on October 21 because of that letter, but it's quite possible that on October 7th he did observe Andre. Well, but that's not what the affidavit of probable cause says and he would be banned by that because if he truly did observe Andre, again, then he would have to submit the affidavit of probable cause saying either an unknown black male or Andre. And remember, they did view photographs of both Omar and Dana before they went out and surveilled. So we're going to assume that they were looking at the photograph and they were looking at Omar and that they could reconcile the two. But nevertheless, the issue as to whether they could reconcile the photographs or whether there was a mistaken identity is a historical fact up to the fact finder. That's something for the jury to decide whether it was objectively reasonable for Officer Walker to mistake Omar for Andre. For purposes of qualifying immunity, it's where we started out. Why would it be up to the jury to determine objective reasonableness? He said in court, I thought, that objective reasonableness is an issue that the court determines as a matter of law. Absolutely, but based on the jury's findings, and you can do this by way of special interrogatories, by way of the jury's findings of certain historical facts that are in dispute. So in other words, if the jury finds that Officer Walker's testimony is not credible, then that would certainly have a bearing on the court's determination as to whether his actions were objectively reasonable. I see my time is up. Thank you very much. Thank you very much. Thank you. We have an interesting case. We'll take the case under advisory. Thank you both for helping. We'll take about a five-minute break and then take Ms. Muirhead's case. Ms. Muirhead.